UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CANDY TRUMP,<br><br>Plaintiff,<br><br>v.<br><br>INTUITIVE SURGICAL INC.,<br><br>Defendant. | Case No. 18-CV-06413-LHK<br><br>**ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTIONS TO EXCLUDE THE EXPERT OPINIONS OF DR. HELEN SALSBURY AND MR. ROGER ODELL**<br><br>Re: Dkt. Nos. 61, 62 |

Plaintiff Candy Trump ("Plaintiff") brings this action against Defendant Intuitive Surgical, Inc. ("Defendant") alleging negligence, products liability, and strict liability claims arising from alleged defects in Defendant's da Vinci robotic surgery system.  ECF No. 19 ("Am. Compl.").  Before the Court is Defendant's motions to exclude the expert opinions of Dr. Helen Salsbury, ECF No. 61 ("Salsbury Mot."), and Mr. Roger Odell, ECF No. 62 ("Odell Mot.").  Having considered the parties' briefs, the relevant law, and the record in this case, the Court DENIES in part and GRANTS in part Defendant's motions to exclude.

## I. BACKGROUND

### A. Factual Background

#### 1. The Parties

1

United States District Court
Northern District of California

Plaintiff Candy Trump is a citizen of West Virginia who resides in Fairdale, West Virginia. Am. Compl. ¶ 3.  Defendant Intuitive Surgical, Inc. is a Delaware corporation with a principal place of business in Sunnyvale, California.  *Id.* ¶ 4.

### 2. The da Vinci System

Defendant produces the da Vinci system, which is a robotic, "multi-armed, remote controlled, surgical device."  *Id.* ¶ 9.  Defendant also produces "'EndoWrist' instruments for use in surgery by the [da Vinci system]."  *Id.* ¶ 10.  "The most commonly used EndoWrist instrument is the Hot Shears Monopolar Curved Scissors" ("MCS").  *Id.* ¶ 46.  The MCS "allows doctors to both cut and cauterize tissue during surgical procedures," and the MCS cauterizes "through the application of monopolar electricity."  *Id.* ¶ 47.  The MCS requires use of a "tip cover accessory" ("TCA") which covers the MCS and "insulate[s] the instrument's metal parts" to "prevent the electricity from spreading to unwanted areas."  *Id.*  The MCS "is used in virtually all da Vinci hysterectomies."  *Id.* ¶ 46.

### 3. Plaintiff's Surgery and Complications

On July 9, 2012, Plaintiff underwent a hysterectomy, and the operating surgeon used a da Vinci system with the MCS and TCA.  *Id.* ¶¶ 52, 56.  According to Plaintiff, Plaintiff "experienced a torn [vaginal] cuff shortly after surgery."  *Id.* ¶ 53.  As a result, Plaintiff "continued to experience abdominal pain and vaginal bleeding and incisions from [the] surgery not healing properly months after the da Vinci surgery."  *Id.*  Accordingly, Plaintiff "has undergone medical procedures and received medical care because of [the] injury" and has suffered "pain and emotional distress."  *Id.* ¶¶ 54–55.

### B. Procedural History

On October 19, 2018, Plaintiff filed a complaint against Defendant in this district and alleged various tort claims arising from injuries that Plaintiff allegedly suffered because of defects in Defendant's da Vinci system.  *See* ECF No. 1.

On January 3, 2019, Defendant filed a motion to dismiss Plaintiff's complaint.  ECF No. 8.

United States District Court
Northern District of California

2

Case No. 18-CV-06413-LHK
ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTIONS TO EXCLUDE THE
EXPERT OPINIONS OF DR. HELEN SALSBURY AND MR. ROGER ODELL

1    However, on January 17, 2019, Plaintiff filed an amended complaint, Am. Compl., and on January

2    22, 2019, United States District Judge Beth Labson Freeman terminated Defendant's motion to

3    dismiss as moot.  ECF No. 20.

4            On January 28, 2019, the case was reassigned to the undersigned judge, ECF No. 23, and

5    on the same day, the Court related the instant case to *Mendoza v. Intuitive Surgical Inc.*, No. 5-18-

6    CV-06414-LHK (N.D. Cal. filed Oct. 19, 2018), and to *Bohannon v. Intuitive Surgical, Inc.*, No.

7    5-18-CV-02186-LHK (N.D. Cal. filed Apr. 12, 2018).  ECF No. 22.

8            On March 6, 2020, Defendant filed the instant motions to exclude the expert opinions of

9    Dr. Helen Salsbury and Mr. Roger Odell.  Salsbury Mot.; Odell Mot.  On March 26, 2020,

10   Plaintiff filed oppositions to each of Defendant's motions to exclude.  ECF Nos. 68 ("Odell

11   Opp'n"), 69 ("Salsbury Opp'n").

12           Additionally, also on March 6, 2020, Defendant filed a motion for summary judgment.

13   ECF No. 60.  On March 27, 2020, Plaintiff filed an opposition, ECF No. 66-2, and on April 3,

14   2020, Defendant filed a reply, ECF No. 71.

15   **II.    LEGAL STANDARD**

16           Federal Rule of Evidence 702 allows admission of "scientific, technical, or other

17   specialized knowledge" by a qualified expert if it will "help the trier of fact to understand the

18   evidence or to determine a fact in issue."  Fed. R. Evid. 702.  Expert testimony is admissible

19   pursuant to Rule 702 if it is both relevant and reliable.  *Daubert v. Merrell Dow Pharms., Inc.*, 509

20   U.S. 579, 589 (1993).  An expert witness may provide opinion testimony if: (1) the testimony is

21   based upon sufficient facts or data; (2) the testimony is the product of reliable principles and

22   methods; and (3) the expert has reliably applied the principles and methods to the facts of the case.

23   Fed. R. Evid. 702.

24           When considering expert testimony offered pursuant to Rule 702, the trial court acts as a

25   "gatekeeper" by "making a preliminary determination that the expert's testimony is reliable."

26   *Elsayed Mukhtar v. Cal. State Univ., Hayward*, 299 F.3d 1053, 1063 (9th Cir. 2002).  In *Daubert*,

27

28   Case No. 18-CV-06413-LHK
     ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTIONS TO EXCLUDE THE
     EXPERT OPINIONS OF DR. HELEN SALSBURY AND MR. ROGER ODELL

United States District Court
Northern District of California

3

the United States Supreme Court identified "four factors that may bear on the analysis": (1) whether a theory or technique can be and has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error; and (4) whether the theory is generally accepted in the scientific community. *Murray v. S. Route Maritime SA*, 870 F.3d 915, 922 (9th Cir. 2017) (citing *Daubert*, 509 U.S. at 593–94). However, the Ninth Circuit has explained that "the reliability analysis remains a malleable one tied to the facts of each case" and that the "*Daubert* factors are exemplary, not constraining." *Id.* The Ninth Circuit has also stated that "[i]t is important to remember that the factors are not 'equally applicable (or applicable at all) in every case,'" and that "[a]pplicability 'depend[s] on the nature of the issue, the expert's particular expertise, and the subject of his testimony.'" *Id.* (first quoting *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1317 (9th Cir. 1995), then quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999)) (third alteration in original).

"Because of the fluid and contextual nature of the inquiry, district courts are vested with 'broad latitude' to 'decid[e] how to test an expert's reliability' and 'whether or not [an] expert's relevant testimony is reliable.'" *Id.* (quoting *Kumho Tire*, 526 U.S. at 152–53) (alterations and emphasis in original). Thus, the Court "may permissibly choose not to examine factors that are not 'reasonable measures of reliability in a particular case.'" *Id.* (quoting *Kumho Tire*, 526 U.S. at 153); *see also id.* at 924 ("District courts have broad range to structure the reliability inquiry and may choose not to comment on factors that would not inform the analysis.").

Moreover, the inquiry into admissibility of expert opinion is a "flexible one," where "[s]haky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) (citing *Daubert*, 509 U.S. at 594, 596). "Under *Daubert*, the district judge is 'a gatekeeper, not a fact finder.' When an expert meets the threshold established by Rule 702 as explained in *Daubert*, the expert may testify and the jury decides how much weight to give that testimony." *Id.* (quoting *United States v. Sandoval-Mendoza*, 472 F.3d 645, 654 (9th Cir. 2006)).

4

Case No. 18-CV-06413-LHK
ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTIONS TO EXCLUDE THE
EXPERT OPINIONS OF DR. HELEN SALSBURY AND MR. ROGER ODELL

## III.   DISCUSSION

Defendant moves to exclude the expert opinions of Dr. Helen Salsbury ("Salsbury") and Mr. Roger Odell ("Odell").  *See* Salsbury Mot.; Odell Mot.  The Court addresses each of Defendant's motions in turn.

### A.   Defendant's Motion to Exclude Salsbury's Expert Opinion

Salsbury is an obstetrician and gynecologist who will testify that Plaintiff's "complications and subsequent procedures were caused by thermal injury to the vaginal cuff as a result of [defects in] the da Vinci System."[1]  ECF No. 69-2 at 2, 6 ("Salsbury Decl.").  Specifically, Salsbury "opines that [Plaintiff] sustained a vaginal cuff dehiscence during [Plaintiff's] *da Vinci*-assisted hysterectomy as a result of stray electricity from the [da Vinci system's] MCS."[2]  Salsbury Opp'n at 1.  Defendant seeks to exclude Salsbury's opinions regarding (1) the cause of Plaintiff's injury and (2) alleged defects in the da Vinci system's MCS and TCA.  *See* Salsbury Mot. at 1.  The Court addresses each of Salsbury's opinions separately.

#### 1.   Salsbury's Testimony as to the Cause of Plaintiff's Injury

Salsbury used a "differential diagnosis" approach to conclude that a defect in the da Vinci system most likely caused Plaintiff's injury.  *See* Salsbury Decl. at 6–9; Salsbury Mot. at 1.  In a differential diagnosis, a physician considers "all potential causes, then rules out the [potential causes] as to which there is no plausible evidence of causation, and then determines the most likely [potential] cause among those that cannot be excluded."  *Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227, 1234 (9th Cir. 2017).  Here, Salsbury considered multiple potential causes for Plaintiff's injuries, including surgical error, several patient risk factors, direct application of thermal energy, indirect application of thermal energy, thermal spread, and a defect in the da Vinci

---

[1] Although Salsbury's expert declaration does not explicitly refer to the MCS or TCA, at her deposition, Salsbury clarified that when she refers to "defects in the da Vinci System," she is referring to defects in the MCS and TCA.  *See, e.g.*, ECF No. 69-4 at 33:23-34:5; 49:15–20 ("Salsbury Dep.").

[2] Vaginal cuff dehisence "refers generally to a separation or opening of the vaginal cuff," and the "vaginal cuff" "is the upper portion of the vagina that opens up into the body and is sutured shut after the removal of the cervix and uterus during a hysterectomy."  Salsbury Mot. at 2 n.2, 3 n.3.

Case No. 18-CV-06413-LHK
ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTIONS TO EXCLUDE THE
EXPERT OPINIONS OF DR. HELEN SALSBURY AND MR. ROGER ODELL

United States District Court
Northern District of California

system.  *See* Salsbury Decl. at 8–9.  Salsbury then ruled out all of the potential causes other than a defect in the da Vinci system.  *See id.*

Defendant argues that Salsbury's differential diagnosis is unreliable because Salsbury did not properly consider several potential causes that would have increased Plaintiff's risk for "development of [vaginal cuff dehiscence]."  Salsbury Mot. at 3.  Specifically, Defendants cite Plaintiff's "smoking, surgical menopause, low BMI, chronic constipation, bacterial vaginosis, and two instances of [sexual] intercourse," all of which Defendant's expert, Dr. Kathryn Arendt, identified as potential causes of Plaintiff's injury.  *Id.*  Defendant argues that to the extent Salsbury considered Plaintiff's smoking and intercourse, Salsbury unscientifically ruled out these potential causes of Plaintiff's injury.  *Id.* at 4.  Moreover, according to Defendant, Salsbury entirely failed to consider Plaintiff's surgical menopause, low BMI, chronic constipation, and bacterial vaginosis as potential causes.  Defendant argues these deficiencies render the differential diagnosis unreliable and inadmissible.  *Id.* at 3.

For a differential diagnosis to be reliable, "the expert must provide reasons for rejecting alternative hypotheses 'using scientific methods and procedures' and the elimination of those hypotheses must be founded on more than 'subjective beliefs or unsupported speculation.'"  *Clausen v. M/V New Carissa*, 339 F.3d 1049, 1058 (9th Cir. 2003).  The Court first addresses whether Salsbury's evaluation of smoking and intercourse renders Salsbury's testimony unreliable.  The Court then turns to the question of whether Salsbury's alleged failure to consider surgical menopause, low BMI, constipation, and bacterial vaginosis renders Salsbury's testimony unreliable.

### a.  Salsbury's Basis for Ruling Out Smoking and Intercourse Is Reliable

The Court finds Salsbury's basis for ruling out smoking and intercourse as potential causes of Plaintiff's injury to be sufficient to satisfy *Daubert*.  Defendant argues that Salsbury improperly ruled out smoking and intercourse because Salsbury "ruled out [those potential causes] without any of the intellectual rigor or peer-reviewed support required under *Daubert*."  Salsbury Mot. at

Case No. 18-CV-06413-LHK
ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTIONS TO EXCLUDE THE
EXPERT OPINIONS OF DR. HELEN SALSBURY AND MR. ROGER ODELL

United States District Court
Northern District of California

4. However, the Ninth Circuit permits an expert to "rely on his or her extensive clinical experience as a basis for ruling out a potential cause of the disease." *Wendell*, 858 F.3d at 1237; *see also Messick v. Novartis Pharms. Corp.*, 747 F.3d 1193, 1198 (9th Cir. 2014) ("Medicine partakes of art as well as science, and there is nothing wrong with a doctor relying on extensive clinical experience when making a differential diagnosis.").

Here, Salsbury has "extensive clinical experience" as a gynecologist and has performed hundreds of robotically assisted hysterectomies. *See* Salsbury Decl. at 2 (stating that Salsbury has practiced for "33 years" and has "performed traditional hysterectomies as well as hundreds of robotically assisted hysterectomies"). Although Salsbury's expert declaration did not extensively discuss either smoking or intercourse, Salsbury nonetheless considered both potential causes. *See* Salsbury Decl. at 8. Specifically, Salsbury noted Plaintiff's history of smoking and did not deem this history to be a "remarkable" element of Plaintiff's medical record. *Id.* Moreover, during Salsbury's deposition, Salsbury noted that "the vagina heals pretty well unless it's been burned. And hundreds of patients are smokers and have hysterectomies, and the dehiscence occurred after six weeks post-op time." Salsbury Dep. at 56:8–12. Salsbury thus concluded that "the logical thinking is that the [vaginal] tissue was burned, healed poorly, and was susceptible to dehiscence versus other causes of poor healing." *Id.* at 56:12–15. Additionally, Salsbury ruled out intercourse as a potential cause of Plaintiff's injury because Plaintiff did not "have intercourse for two months following [Plaintiff's] surgery." Salsbury Decl. at 8.

Salsbury relied on her "extensive clinical experience" to rule out smoking and intercourse as potential causes of Plaintiff's injury. As stated above, such reliance renders a differential diagnosis sufficiently reliable under Ninth Circuit law. *See, e.g.*, *Messick*, 747 F.3d at 1198 ("[T]here is nothing wrong with a doctor relying on extensive clinical experience when making a differential diagnosis."). Thus, Salsbury's decision to rule out smoking and intercourse as potential causes of Plaintiff's injury does not warrant exclusion. Defendant's disagreements with Salsbury's decision go to weight and not admissibility. *See id.* at 1199 ("Remaining issues

7

United States District Court
Northern District of California

1  regarding the correctness of [the differential diagnosis], as opposed to its relevancy and reliability,

2  are a matter of weight, not admissibility.").  Defendant may attack Salsbury's decision on cross

3  examination, with contrary evidence, and at closing argument, but not with exclusion.  *Primiano*,

4  598 F.3d at 564 ("Shaky but admissible evidence is to be attacked by cross examination, contrary

5  evidence, and attention to the burden of proof, not exclusion.").

6          The Court now turns to Salsbury's failure to explicitly address surgical menopause, low

7  BMI, constipation, and bacterial vaginosis as potential causes.

8                  **b.  Salsbury's Failure to Explicitly Address Surgical Menopause, Low BMI,
                        Constipation, and Bacterial Vaginosis Does Not Render Salsbury's
9                       Testimony Unreliable**

10         Salsbury's failure to explicitly address surgical menopause, low BMI, constipation, and

11  bacterial vaginosis does not render Salsbury's differential diagnosis unreliable.  The Ninth Circuit

12  has held that an expert need not "eliminate all other possible causes of a [medical] condition for

13  the expert's testimony to be reliable."  *Wendell*, 858 F.3d at 1237.  Indeed, numerous courts have

14  explicitly held that an expert's failure to even consider a potential cause in the context of a

15  differential diagnosis does not necessarily render the analysis unreliable.  *See, e.g.*, *Stanely v.*

16  *Novartis Pharms. Corp.*, 11 F. Supp. 3d 987, 1001 (C.D. Cal. 2014) (denying a motion to exclude

17  and holding that a differential diagnosis need not consider every potential cause to be admissible);

18  *Rosales v. City of Los Angeles*, No. 2:13-cv-07262-SVW-AGRx, 2014 WL 12696917, at *4 (C.D.

19  Cal. Feb. 4, 2014) (same); *Stambolian v. Novartis Pharms. Corp.*, No. CV 12-4378 BRO (FMOx),

20  2013 WL 6345566, at *5 (C.D. Cal. Dec. 6, 2013) (same); *Ferguson v. Riverside Sch. Dist., No.*

21  *416*, No. CS-00-0097-FVS, 2002 WL 34355958, at *9 (E.D. Wash., Feb. 6, 2002) (same).  The

22  instant case does not represent a situation in which the expert completely failed to consider and

23  rule out *any* other potential causes.  *See* Salsbury Decl. at 8–9; *see also Claar v. Burlington N.*

24  *R.R.*, 29 F.3d 499, 502 (9th Cir. 1994) (excluding an expert opinion where the expert did not make

25  "any effort to rule out other possible causes for the injuries plaintiffs complain of").  Instead, as

26  discussed, Salsbury considered numerous potential causes, including surgical error, several patient

27

28
    Case No. 18-CV-06413-LHK
    ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTIONS TO EXCLUDE THE
    EXPERT OPINIONS OF DR. HELEN SALSBURY AND MR. ROGER ODELL

United States District Court
Northern District of California

1   risk factors, direct application of thermal energy, indirect application of thermal energy, thermal

2   spread, and a defect in the da Vinci system.  *See* Salsbury Decl. at 8–9.

3          The Court does not find the additional potential causes cited by Defendant to be so obvious

4   that Salsbury's failure to explicitly address these potential causes renders Salsbury's testimony

5   unreliable.  *See* Salsbury Mot. at 2–4 (citing *Nelson v. Matrixx Initiatives*, No. C 09-02904 WHA,

6   2012 WL 3627399, at *8–11 (N.D. Cal. Aug. 21, 2012) (excluding a differential diagnosis for

7   failure to account for obvious alternative causes where the expert only considered a single other

8   potential cause of the injury)).  Indeed, in the instant case, even Defendant's own expert does not

9   highlight any single potential cause as obvious.  Instead, Defendant's expert argues that surgical

10  menopause, low BMI, constipation, and bacterial vaginosis, in combination with smoking and

11  intercourse, *operated in tandem* to cause Plaintiff's injury.  *See* ECF No. 61-1 Ex. I at 2

12  ("[Plaintiff's injuries] were caused by her multiple medical risk factors for poor wound healing

13  [including smoking, surgical menopause, low BMI, constipation, and bacterial vaginosis,]

14  aggravated by the physical factors of intercourse after surgery.") (Arendt's expert report).  As

15  discussed above, Salsbury did indeed explicitly address two of these potential causes: smoking

16  and intercourse.  Whether any of the additional potential causes cited by Defendant's expert are

17  more likely causes of Plaintiff's injury is a question for the fact finder, which in the instant case is

18  a jury.  As such, to the extent Salsbury failed to consider surgical menopause, low BMI,

19  constipation, or bacterial vaginosis, this failure goes to the weight of Salsbury's opinion, not its

20  admissibility.  Defendant may cross-examine Salsbury regarding these additional potential causes

21  at trial.  *See Stanley*, 11 F. Supp. 3d at 1001 ("Defendant can cross-examine [the expert] regarding

22  additional factors that he did not rule out during trial.").

23          In sum, neither Salsbury's consideration of smoking and intercourse as potential causes,

24  nor Salsbury's failure to explicitly address surgical menopause, low BMI, constipation, or

25  bacterial vaginosis as potential causes, renders Salsbury's differential diagnosis unreliable.

26  Because Salsbury's differential diagnosis is sufficiently reliable, the Court DENIES Defendant's

27

28  Case No. 18-CV-06413-LHK
    ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTIONS TO EXCLUDE THE
    EXPERT OPINIONS OF DR. HELEN SALSBURY AND MR. ROGER ODELL

1   motion to exclude Salsbury's opinion as to the cause of Plaintiff's injury.

2       **2.  Salsbury's Testimony Regarding Product Defects**

3       In addition to Salsbury's testimony on causation, Salsbury opines that "[a]n injury to the

4   vaginal cuff would more likely than not indicate a defect in the da Vinci System, which—based

5   upon [Salsbury's] review of [Defendant's] internal documents—[] is known to produce

6   unintended amounts of electrical current which can thermally injure the surrounding tissue."

7   Salsbury Decl. at 7.

8       Defendant argues that Salsbury's opinion is unreliable because Salsbury "had no

9   knowledge or information about the condition of the *specific* [MCS or TCA] used in [Plaintiff's da

10  Vinci-assisted surgery]" and "fails to provide any specific design feature, manufacturing process,

11  or warning relating to the [da Vinci system's] MCS or [TCA] that was allegedly defective."

12  Salsbury Mot. at 5 (emphasis added).  Moreover, Defendant argues that "Salsbury is not qualified

13  to form opinions about the design and manufacture of the MCS and its [TCA] used in [Plaintiff's]

14  case." *Id.*  As such, Defendant argues that Salsbury's opinion "does not fit the facts of the case"

15  and is inadmissible.  *Id.*

16      Plaintiff responds that Salsbury's opinion is admissible because "Salsbury relies on ample

17  peer-reviewed literature that discusses the defects."  Salsbury Opp'n at 5.  Furthermore, Plaintiff

18  argues that even though Salsbury did not have information pertaining to the *specific* MCS or TCA

19  used in Plaintiff's surgery, "Salsbury is well-aware of the fact that the version . . . used in

20  [Plaintiff's surgery] was recalled."  *Id.*

21      Plaintiff has the better argument.  Although an expert's testimony must "fit" the facts of

22  the case, Salsbury's lack of knowledge of the condition of the *specific* MCS and TCA used in

23  Plaintiff's surgery does not render Salsbury's testimony inadmissible.  *See Daubert*, 509 U.S. at

24  591 (discussing requirement that evidence "fit" the facts of the case).  Here, Salsbury relied on

25  various pieces of medical literature that discuss defects in the MCS and TCA, as well as

26  documents that relate to da Vinci system product recalls.  *See* Salsbury Decl. at 11–12 (listing the

27

28  Case No. 18-CV-06413-LHK
    ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTIONS TO EXCLUDE THE
    EXPERT OPINIONS OF DR. HELEN SALSBURY AND MR. ROGER ODELL

United States District Court
Northern District of California

United States District Court
Northern District of California

1  materials Salsbury relied on).  The defects in the literature on which Salsbury relied are the same

2  defects alleged here: cracking and insulation failure.  *See* Salsbury Dep. at 35:23–25 ("When I

3  [Salsbury] reviewed the literature, I was quite amazed at the number of instruments that were

4  recalled and/or fixed due to cracking."); Am. Compl. ¶¶ 58–59.  Accordingly, the Court finds that

5  Salsbury properly relied on reports of known defects to form Salsbury's expert opinion.

6          Although evidence of a defect in the specific MCS and TCA used in Plaintiff's surgery

7  would no doubt strengthen Salsbury's testimony, an expert opinion does not have to be perfect.

8  *See, e.g.*, *United States v. Cerna*, No. CR 08-0730 WHA, 2010 WL 3448528, at *7 (N.D. Cal.

9  Sept 1, 2010) ("A method, however, need not be perfect science, nor satisfy all of the factors

10  articulated in *Daubert*.").

11          Furthermore, the Court disagrees with Defendant that Salsbury's testimony is unreliable

12  because "Salsbury is not qualified to form opinions about the design and manufacture of the MCS

13  and its [TCA]."  Salsbury Mot. at 5.  Salsbury opines that in light of differential diagnosis and the

14  available literature, Plaintiff's injury would "more likely than not indicate a defect" similar to

15  previously reported defects in the da Vinci system.  Salsbury Decl. at 7; *see also* Salsbury Opp'n

16  at 5.  Because Salsbury has performed "hundreds of robotically assisted hysterectomies" and has

17  extensive "experience with the da Vinci System," the Court concludes that Salsbury is qualified to

18  opine that Plaintiff's injury arose from a product defect similar to previously reported defects in

19  the da Vinci system.  Salsbury Decl. at 2.

20          Accordingly, the Court DENIES Defendant's motion to exclude Salsbury's opinion

21  regarding product defects.  The Court now proceeds to consider Defendant's motion to exclude

22  Odell's opinion.

23  **B. Defendant's Motion to Exclude Odell's Expert Opinion**

24          Odell is an electrical engineer who will testify that Defendant's da Vinci system "was

25  defectively designed because it did not incorporate [Active Electrode Monitoring ("AEM")] or

26  coaxial shielding and monitoring of the shaft of the device."  ECF No. 68-2 at 2 ("Odell Decl.").

27

28  Case No. 18-CV-06413-LHK
    ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTIONS TO EXCLUDE THE
    EXPERT OPINIONS OF DR. HELEN SALSBURY AND MR. ROGER ODELL

United States District Court
Northern District of California

1    Broadly, AEM functions to "prevent stray energy burns off the shaft of the [da Vinci system's

2    MCS]" and works "like a circuit breaker designed to detect an insulation failure and or excessive

3    capacitive coupling . . . protecting the patient from an unintended burn." *Id.* at 1–2.

4        Defendant seeks to exclude Odell's opinions as to (1) "defects in the [da Vinci system's]

5    MCS," which arise from the Defendant's failure to incorporate AEM, and (2) defects in the da

6    Vinci system's TCA. *See* Odell Mot. at 1. The Court addresses each of these two purported bases

7    for exclusion in turn.

8            **1. Odell's Testimony as to Defects in the da Vinci System's MCS**

9        Defendant seeks to exclude as unreliable Odell's testimony that the da Vinci system's

10   MCS is defective for failure to incorporate AEM. *See* Odell Mot. at 2–4. Specifically, Defendant

11   argues that hospitals do not widely use AEM and that there has only been a 5% adoption rate of

12   the technology. *Id.* at 2. Moreover, Defendant states that Odell cannot point to any comparative

13   studies that demonstrate that Defendant's MCS is unsafe without AEM. *Id.* at 3. Furthermore, in

14   a footnote, Defendant argues that Odell improperly "relied on 16 adverse event reports," which

15   Defendant contends are not reliable evidence and "are not materials on which electrical engineers

16   [] reasonably rely." *Id.* at 3 n.1 (quotation marks omitted). Lastly, Defendant argues that Odell

17   "simply parrots" the opinions of two other experts, Ms. Christina Bernstein and Dr. Paul Steiner,

18   neither of whom are experts in the instant case. *Id.* at 3.

19       Plaintiff responds that Odell's opinion is reliable and that Defendant mischaracterizes the

20   scientific and medical community's acceptance of AEM. *See* Odell Opp'n at 2–3. Plaintiff also

21   argues that Odell properly relies on Bernstein's and Steiner's expert reports, and that Odell

22   "utilizes those expert opinions to acquaint himself with background information in reaching

23   [Odell's] *own* opinions and conclusion." *Id.* at 4 (emphasis in original).

24       The Court agrees with Plaintiff. The Court finds that Odell relies on sufficient evidence to

25   show that at least a portion of the medical community would view AEM as making the MCS safer.

26   Further, the Court finds that Odell does not improperly rely on other experts' reports. Finally, the

27

28
     Case No. 18-CV-06413-LHK
     ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTIONS TO EXCLUDE THE
     EXPERT OPINIONS OF DR. HELEN SALSBURY AND MR. ROGER ODELL

1  Court finds that Odell's citations to adverse event reports does not render Odell's testimony

2  unreliable.  The Court addresses each point in turn.

### a.   Odell Relies on Sufficient Evidence to Show That at Least a Portion of the Medical Community Views AEM as Effective

The Court disagrees that the absence of comparative studies of the MCS's safety with and

without AEM, and the low adoption rate of AEM in hospitals, indicates that the medical

community has rejected Odell's views.  *See* Odell Mot. at 2.  The Ninth Circuit has held that

"testimony may still be deemed reliable enough to be admitted" even in the absence of "peer

review and publication."  *Clausen*, 339 F.3d at 1056 (citing *Daubert*, 43 F.3d at 1318).  Instead,

the expert must "show that they have followed the scientific evidence method, as it is practiced by

(at least) a recognized minority of scientists in their field."  *Daubert*, 43 F.3d at 1319.

Here, despite AEM's low adoption rate and the lack of comparative studies, Odell relies on

other evidence to demonstrate that at least a portion of the medical community would agree that

AEM would make the da Vinci system's MCS safer.  Specifically, Odell's expert declaration

states that "AEM has received praise in the literature and independent test laboratory ECRI

publisher of Health Devices," Odell Decl. at 4, which is a "non-profit organization" that conducts

independent medical device evaluations.  Odell Opp'n at 2 n.1.  Additionally, Odell's declaration

states that Valleylab, "the largest manufacture of electrosurgical generators and accessories," also

praised AEM.  *See* Odell Decl. at 4.  Moreover, Odell states that "[m]illions of procedures [are]

performed with AEM," and that the low 5% adoption rate stems from "market barriers for AEM

instruments that have nothing to do with efficacy or cost."  *Id.*  Further, Odell relies on various

studies and reports that highlight the danger of insulation failure from the da Vinci system's MCS.

*See id.* at 5–6.  Odell's opinion thus uses a reliable methodology, notwithstanding the fact that

Odell does not point to a specific study comparing the safety of the MCS with and without AEM.

In sum, Odell's opinions do not reflect views that have not been accepted by the medical

community.  Accordingly, Odell's opinion may not be excluded on this basis.

### b.   Odell's Use of the Bernstein and Steiner Expert Reports Is Proper

13

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Furthermore, the Court disagrees with Defendant that Odell's use of two previous expert reports merits exclusion.  *See* Odell Mot. at 3–5.  As Plaintiff notes, courts recognize that "an expert can appropriately rely on the opinions of others if other evidence supports [the expert's] opinion and the record demonstrates that the expert conducted an independent evaluation of that evidence."  *In re Conagra Foods, Inc.*, 302 F.R.D. 537, 556 (C.D. Cal. 2014); *see also Jerpe v. Aerospatiale*, No. CIV. S-03-555 LKK/DAD, 2007 WL 1394969, at *6 (E.D. Cal. May 10, 2007) (admitting an opinion where the expert relied on another expert's testimony); *Gray v. United States*, No. 05cv1893 J(BLM), 2007 WL 4644739, at *8 (S.D. Cal. Mar. 12, 2007) (same). Additionally, an expert may also rely on previous expert reports where the expert supplements the prior report with additional evidence and experience, and where the expert "does not rely exclusively" on the prior report.  *Guadiana v. State Farm Fire & Cas. Co.*, No. CIV 07-326 TUC FRZ (LAB), 2013 U.S. Dist. LEXIS 202237, at *10 (D. Ariz. Oct. 18, 2013) ("[The expert] does not rely exclusively on [the prior expert's] opinion [].  His opinions are also informed by his direct experience and observations . . . .").

Here, the Court finds that Odell's opinion does not merely parrot the opinions of Bernstein and Steiner.  Instead, Odell incorporates these prior opinions in conjunction with extensive additional evidence to reach Odell's ultimate conclusion.  Specifically, Odell's deposition testimony shows that Odell relied on Bernstein's report to conclude that regulations and statutes that cover medical devices "require[] [Defendant] to address issues . . . with a design change." ECF No. 62-1 Ex. B at 27:15–28:7 ("Odell Dep.").  The same deposition testimony also indicates that Odell relied on Steiner's report for the notion that Steiner "was extremely critical of the material used [in the MCS] because [the material] would result in full thickness insulation failures."  *Id.* at 32:6–22.

Although the deposition testimony indicates that Odell did not independently verify the conclusion of either report, this is not a situation in which Odell solely relied on the reports without independent evidence.  *See id.* at 30:23–31:1; 33:1–9.  Instead, as discussed above, Odell

14

1    relied on a variety of other evidence apart from Bernstein's and Steiner's reports.  Thus, Odell did

2    not "rely exclusively" on the previous opinions of Bernstein and Steiner, but instead incorporated

3    extensive additional evidence.  *Guadiana*, 2013 U.S. Dist. LEXIS 202237, at *10 ("[The expert]

4    does not rely exclusively on [the prior expert's] opinion [].  His opinions are also informed by his

5    direct experience and observations . . . .").  Moreover, Odell's deposition testimony demonstrates

6    that Odell relied on the Bernstein and Steiner reports for limited purposes.  *See generally* Odell

7    Dep.  Indeed, Odell's expert declaration only makes a single reference to each report.  *See* Odell

8    Decl. at 1. In light of Odell's minimal reliance on the previous expert reports, as well as Odell's

9    additional evidence, the Court declines to take the drastic measure of excluding Odell's opinion as

10   to the MCS.

### c.  Odell's Use of Adverse Event Reports Is Proper

12       Finally, the Court also disagrees with Defendant that Odell's use of "adverse event

13   reports" renders Odell's opinion unreliable.  *See* Odell Mot. at 3 n.1.  Defendant cursorily argues

14   in a footnote that "adverse event reports are not materials on which electrical engineers (or any

15   other scientific expert)" may reasonably rely.  *Id.*  As Defendant notes, when adverse event reports

16   are the sole materials on which experts in other cases have relied, courts have excluded those

17   experts.  *See, e.g.*, *Casey v. Ohio Medical Prods.*, 877 F. Supp. 1380, 1386 (N.D. Cal. 1995)

18   (explaining that "case reports are not reliable scientific evidence of causation" and excluding

19   expert report because it solely relied on case reports); *see also McClain v. Metabolife Internat'l,*

20   *Inc.*, 401 F.3d 1233, 1254 (11th Cir. 2005) (holding that "in light of all the other failures of proof

21   on the reliability of their methods, Plaintiffs' experts cannot now redeem their opinions with this

22   type of anecdotal evidence [*i.e.*, case reports]").

23       However, in contrast to the experts in the only cases cited by Defendant, Odell's opinion

24   does not *solely* rely on such reports in the instant case.  Instead, Odell combines adverse event

25   reports with the additional sources of information discussed above.  *See generally* Odell Decl. at

26   1–7.  Accordingly, Odell's use of adverse event reports does not warrant exclusion.  As with

27

28   Case No. 18-CV-06413-LHK
     ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTIONS TO EXCLUDE THE
     EXPERT OPINIONS OF DR. HELEN SALSBURY AND MR. ROGER ODELL

United States District Court
Northern District of California

1    Odell's reliance on Bernstein's and Steiner's reports, Defendant may challenge Odell's use of

2    adverse event reports through cross-examination, contrary evidence, and closing argument at trial.

3         In sum, the Court finds that Odell's testimony that the MCS is defective for failure to

4    incorporate AEM relies on sufficient evidence, does not improperly rely on previous expert

5    reports, and does not improperly rely on adverse event reports.  Therefore, the Court DENIES

6    Defendant's motion to exclude Odell's opinion as to the MCS.

7              **2.  Odell's Testimony as to Defects in da Vinci System's TCA**

8         Lastly, Defendant objects to Odell's opinions concerning defects in the da Vinci system's

9    TCA because "(1) Odell is not qualified to offer [the opinions]; and (2) [the opinions] are

10   unreliable."  Salsbury Mot. at 4.  However, Defendant also claims that Odell's opinions "relating

11   to the TCA are untimely" and that "the parties have agreed Odell will not be offered or asked

12   about the TCA and are working out the parameters of such a stipulation."  *Id.* at 1 n.1.

13   Nonetheless, Defendant presents these arguments "out of an abundance of caution, should the

14   parties be unable to reach a final agreement on the withdrawal of [Odell's opinion on the TCA]."

15   *Id.*

16        Plaintiff's opposition does not address Defendant's arguments.  *See* Salsbury Opp'n at 1.

17   Instead, Plaintiff states that "Defendant correctly notes that Plaintiff will not offer or ask Mr. Odell

18   about the TCA, unless Defendant opens the door at trial."  *Id.*  Therefore, because Plaintiff does

19   not oppose Defendant's motion to exclude Odell's opinion regarding the TCA, the Court

20   GRANTS Defendant's motion with respect to Odell's opinions on the da Vinci system's TCA.

21   **IV.    CONCLUSION**

22        For the foregoing reasons the Court DENIES Defendant's motion to exclude Salsbury's

23   opinions concerning causation of Plaintiff's injury and defects in the da Vinci system; DENIES

24   Defendant's motion to exclude Odell's opinion concerning defects in the da Vinci system's MCS;

25   and GRANTS Defendant's motion to exclude Odell's opinion concerning defects in the da Vinci

26   system's TCA.

27                                              16

United States District Court
Northern District of California

1    **IT IS SO ORDERED.**

2

3    Dated: April 24, 2020

4    _____

5    LUCY H. KOH
     United States District Judge

Case No. 18-CV-06413-LHK
ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTIONS TO EXCLUDE THE
EXPERT OPINIONS OF DR. HELEN SALSBURY AND MR. ROGER ODELL

United States District Court
Northern District of California